**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

**IN RE: SARAH J. MORRIS**                                   Case No. 04-38321-DOT
    Chapter 13 Debtor

**MEMORANDUM OPINION**

Hearing was held January 31, 2007, on motion filed by Zabu Holding Company, Inc., to reconsider the court's order entered December 21, 2006, and on motion filed by SunTrust Mortgage, Inc., to intervene and to join in the motion to reconsider. Debtor Sarah J. Morris and her non-debtor husband Robert E. Morris oppose the motions. The dispute centers around the failure of a deed of trust holder to obtain relief from the codebtor stay of Bankruptcy Code § 1301 as to Mr. Morris before causing a foreclosure sale of the Morrises' residential real property on June 20, 2006. A second hearing was held March 14, 2005, at which the court heard testimony from debtor's counsel.

The court's order of December 21, 2006, granted (in part) debtor's motion to set aside the foreclosure sale. For reasons stated in this opinion, the court grants the motions to reconsider and will vacate the order of December 21 and retroactively grant relief from the codebtor stay. The foreclosure sale will thus be validated.

Facts.

The following facts, which are essentially undisputed, are found in the court's docket history and in the various pleadings.

Debtor Sarah J. Morris filed this individual chapter 13 case on September 2, 2004. At the time of filing and throughout the case, debtor has been married to Robert E. Morris, who is not a debtor in a bankruptcy case. During this period, debtor and Mr. Morris owned as tenants by the entireties a residence located at 10397 Morning Dew Lane, Mechanicsville, Hanover County,

Virginia. This real property was subject to two deeds of trust, including a second deed of trust held by UMLIC VA LLC (UMLIC). Although Mr. Morris had signed the second deed of trust instrument securing the UMLIC note, he was not an obligor on the note.

Debtor's chapter 13 plan was confirmed by the court on November 9, 2004. On April 13, 2006, the chapter 13 trustee filed a motion to dismiss the case. After several continuances, the trustee dismissed this motion on February 15, 2007.

On October 14, 2005, a motion for relief from stay was filed by UMLIC with respect to its second deed of trust on the Morris residence. (docket 16) The motion was filed as to the debtor only and did not mention debtor's husband Robert Morris. The motion alleged that the unpaid principal balance on the deed of trust was $38,669.92, that the total payoff was $55,743.93, and that the loan was six months delinquent post-petition. An amended motion for relief from stay was filed on November 23, 2005, which stated additional information regarding the description of the subject real property. (docket 20)

Debtor did not file an answer contesting UMLIC's motion (or amended motion) for relief from stay. Hearing on the motion was held November 9, 2005. The court ruled from the bench that the motion would be granted and entered an order granting relief from stay on November 30, 2005. (docket 22)

On June 20, 2006, UMLIC through its trustee conducted a foreclosure sale of the Morris residence. The high bid for the property at foreclosure was made by a subsidiary of UMLIC, which subsequently transferred its bid to Zabu Holding Company, LLC (Zabu), an entity unrelated to UMLIC. The property was deeded to Zabu by trustee's deed dated July 3, 2006, and recorded July 14, 2006. The trustee's deed did not disclose that one of the owners, Sarah Morris,

had been a debtor in bankruptcy at the time of foreclosure. Subsequently, Zabu conveyed the property to Brad Jester, owner of Zabu. Jester obtained a loan from SunTrust in the amount of $328,500 and executed a first deed of trust on the property to secure the loan by SunTrust. The deed of trust was recorded on September 11, 2006.

In early August 2006, debtor's counsel informed UMLIC's counsel for the first time that UMLIC had failed to obtain relief from the codebtor stay as to Robert Morris.

Notwithstanding the foreclosure sale and subsequent transfers, the Morrises have remained in possession of the property up through the time of hearing.

Subsequent Procedural History.

DEBTOR'S MOTION TO SET ASIDE FORECLOSURE

On November 2, 2006, debtor filed a motion to set aside foreclosure and reimpose automatic stay (docket 31), which in summary recited the following: 1) that the court had granted relief from stay to UMLIC[1] on November 30, 2005; 2) that UMLIC's motion and the court's order for relief did not apply to debtor's husband Robert Morris, who was not mentioned in the documents; 3) that debtor's residence underwent a foreclosure sale on June 20, 2006, in violation of 11 U.S.C. § 1301; 4) that upon foreclosure the realty was conveyed to Zabu, an entity related to UMLIC; and 5) that UMLIC and Zabu are attempting to take possession of the debtor's property. Debtor's motion further alleged that the foreclosure sale was not valid because of the failure of UMLIC to obtain relief from the codebtor stay as to Robert Morris and

---

[1]Debtor's motion refers to the mortgagee as "United Mortgage and Loan Investment" rather than UMLIC. However, throughout this case, pleadings filed by this creditor refer to itself as UMLIC VP LLC. Debtor's motion also states that the foreclosure sale took place on June 24, 2006. However, the trustee's deed states that the sale took place on June 20, 2006.

requested the court to set aside the foreclosure and declare it void.

UMLIC'S RESPONSE TO MOTION TO SET ASIDE FORECLOSURE

On November 10, 2006, UMLIC responded to debtor's motion to set aside foreclosure by filing a motion requesting the court to extend the relief from automatic stay to Robert Morris pursuant to § 1301 and deny debtor's motion to set aside the foreclosure. The motion alleged that Mr. Morris was not a signatory to the deed of trust note and was only co-signor on the deed of trust and further that UMLIC had not named him in the motion for relief from stay because of its mistaken belief that Mr. Morris was deceased. Zabu, purchaser of the property at foreclosure, was "a totally unrelated business entity."

ZABU'S RESPONSE TO DEBTOR'S MOTION TO SET ASIDE FORECLOSURE

Zabu also filed a response to debtor's motion, alleging that it was a good faith purchaser of the real property, that it was unaware of UMLIC's "technical" violation of the codebtor stay and that the irreparable harm and extreme delay by debtor in objecting to the foreclosure justified the court annulling the stay as to Robert Morris.

HEARING ON THE MOTIONS

Hearing on the debtor's and UMLIC's motions and Zabu's response was held November 15, 2006. The court ruled from the bench that debtor's motion to set aside the foreclosure sale of June 20, 2006, would be granted; however, the court granted immediate relief from the codebtor stay to UMLIC. The court's order was entered on December 21, 2006.

<u>Discussion and Conclusions of Law.</u>

By order entered December 21, 2006, the court granted debtor's motion to vacate UMLIC's foreclosure sale of June 20, 2006, but denied debtor's request to reimpose the stay.

4

Instead, the court granted immediate, prospective relief from stay to UMLIC. Zabu Holding Company, purchaser at foreclosure, now moves the court to reconsider the order of December 21; Zabu requests the court to annul or grant retroactive relief from the § 1301 codebtor stay, which would have the effect of reinstating the foreclosure sale. SunTrust, which was not previously noticed of debtor's motion and the ensuing hearing, moves the court for authority to intervene in the controversy and to join in Zabu's motion to reconsider.

MOTION TO ALTER OR AMEND UNDER FED. R. CIV. PROC. 59

A motion to reconsider or to alter or amend a judgment is governed by Fed. R. Civ. Proc. 59, made applicable by Bankruptcy Rule 9023. In order for a bankruptcy court to alter or amend a judgment under Fed. R. Civ. Proc. 59(e), a movant must show it is necessary on one of three grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." E.E.O.C. v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997); Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). The three similar grounds for granting a new trial under rule 59(a)(2) are: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. In re Devault Mtg. Co., 4 B.R. 382, 385 (Bankr. E.D. Pa. 1980). The district court of this district has further clarified the grounds for granting a motion to reconsider. Such a motion should be granted only where (1) the court has "patently misunderstood" a party, (2) the court has made a decision outside the "adversarial issues presented," (3) the court has made an error, "not of reasoning, but of apprehension," or (4) a "controlling or significant change" has occurred in the law or the facts since the parties submitted the issue. U.S. v. Smithfield Foods, Inc., 969 F. Supp. 975, 977 (E.D. Va. 1997) (citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,

99 F.R.D. 99, 101 (E.D. Va. 1983)).

RECONSIDERATION OF § 1301 DECISION

The circumstances here without doubt compel the court to reconsider the ruling and order of December 21, 2006, if for no other reason than SunTrust's lack of notice. Moreover, at the time of the ruling the court was not fully apprised of the potential harm to the parties who relied upon the validity of UMLIC's foreclosure of the debtor's property. Thus, there has been important new evidence that the court did not previously consider.

On reconsideration, the ultimate issue is whether the court should have annulled, or retroactively granted relief from, the codebtor stay of § 1301 rather than setting aside the foreclosure and granting relief from stay prospectively.

Bankruptcy Code § 1301, upon which the debtor and codebtor rely, provides a stay comparable to the automatic stay of § 362(a) in a chapter 13 case to a non-debtor who is obligated with the debtor on a consumer debt. Section 1301(c) provides that "the court shall grant relief from the [codebtor] stay . . . with respect to a creditor to the extent that — . . . (3) such creditor's interest would be irreparably harmed by continuation of such stay." 11 U.S.C. § 1301(c).

The parties do not dispute that the codebtor stay applied to Robert Morris at the time the court granted relief from stay as to debtor and later when the foreclosure sale was held. This court has previously considered a case with similar circumstances. In <u>Harris v. Margaretten & Company (In re Harris)</u>, 203 B.R. 46 (Bankr. E.D.Va. 1994), the court held that a creditor's foreclosure sale while the codebtor stay remained in effect was void. However, the court recognized that notwithstanding the absence of specific language in § 1301 authorizing the court

6

to annul the codebtor stay, § 1301(c) was flexible enough to permit the granting of relief from the stay "appropriate to the circumstances presented, including annulment." Id., at 50. However, annulment would be "appropriate in only very limited circumstances; for example, annulment may be allowed in a unique situation to balance the equities between the parties." Id.; see also In re Allen, 300 B.R. 105, 121-122 (Bankr. D. D.C. 2003); Hope v. United Companies Funding, Inc. (In re Holder), 260 B.R. 571, 577 (Bankr. M.D. Ga. 2001).

In the present case, not only has the secured creditor sold the real property at foreclosure, but the purchaser has obtained a loan based on the granting of a deed of trust secured by the property and has paid the Morrises' first deed of trust loan on the property. The greater difficulty is presented by the new deed of trust lender, which reasonably believed it was obtaining good title to the property as security. SunTrust asserts that it will be irreparably harmed unless the foreclosure sale is validated, and there can be little doubt that the court's merely granting prospective relief from the codebtor stay leaves both Zabu and SunTrust in precarious positions.

The parties have all agreed and have so argued that the court must balance the equities in this case as between the Morrises and those claiming under the foreclosure deed. The court agrees and will take a fresh look at the previous ruling in light of new evidence.

Attached to the briefs filed by debtor and Mr. Morris are copies of correspondence sent by debtor to UMLIC and its foreclosure trustee that strongly support a conclusion that UMLIC's failure to obtain codebtor relief was of its own doing. For some reason UMLIC's records indicated that Mr. Morris was deceased. Debtor's letters advising the creditor of this misinformation seem to have been ignored, which could account for UMLIC's failure to advise its counsel to seek codebtor relief from stay. (Further illustrating UMLIC's administrative

problems is the apparent fact that it had lost the original promissory note of Mrs. Morris.) As late as January 18, 2006, the foreclosure trustee wrote a letter addressed solely to debtor and advising her that the trustee would begin sale proceedings. Debtor's reply letter dated January 30, 2006, informed the trustee that she owned the property with her husband. But debtor's reply did not mention the fact that UMLIC had failed to obtain relief from the codebtor stay of § 1301. Incredibly, the trustee addressed another similar letter to debtor only dated March 16, 2006, to which the debtor also replied. It is apparent that the foreclosure trustee eventually understood there was a co-owner of the property because he conducted the foreclosure against both Mr. and Mrs. Morris. However, he also apparently failed to make the connection between the joint ownership and the fact that UMLIC had not obtained relief from the codebtor stay.

After the foreclosure on June 20, the Morrises remained in possession of the premises. According to the brief filed by counsel to Robert Morris (docket 58), debtor and her counsel had been in contact with Zabu in early July 2006, just after the foreclosure sale. The brief states that debtor was attempting to refinance the property and purchase it from Zabu, who offered to sell it back to Mr. and Mrs. Morris for a price "significantly in excess" of the amount owed at the time of foreclosure. Although debtor's counsel informed counsel for UMLIC in early August 2006 that the creditor had failed to obtain relief from codebtor stay, there is nothing in the present record to suggest that debtor or her counsel made Zabu aware of UMLIC's failure until debtor filed her motion to vacate foreclosure on November 2, 2006. SunTrust was not aware of debtor's bankruptcy case until after debtor's motion was filed.

Section 1301 was enacted primarily for the benefit of chapter 13 debtors by relieving them from pressures that creditors might exert on codebtors who were "friends, relatives, and

fellow employees of the chapter 13 debtor." 8 Collier On Bankruptcy ¶ 1301.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 3/06). Given the purpose of the codebtor stay, as a practical matter, once a creditor is granted relief from the automatic stay of § 362(a) as to the debtor, the purpose of the codebtor stay no longer exists as to that creditor, and relief from the codebtor stay, if requested, is invariably granted. Here, that result would have been even more obvious due to the fact that the debtor did not oppose relief from stay.

In a difficult balancing of the equities here, the court must give substantial weight to the fact that SunTrust made a large deed of trust loan against the property to Zabu, while having no notice of debtor's bankruptcy case or UMLIC's failure to obtain codebtor relief. Although it may be presumed that Zabu was aware of the bankruptcy case, there is no evidence that it was aware of the codebtor problem. On the Morrises' side they stand to lose their residence. As the court is well aware, they have struggled to retain the property, though there must be some doubt whether they are in position to reacquire it.

The equities here plainly favor annulment of the codebtor stay so as to validate the foreclosure sale. Otherwise, the foreclosure purchaser and SunTrust will be left with a legal problem not of their own making that could be quite difficult to resolve. Accordingly, the court will vacate the order of December 21, 2006, and retroactively grant relief from codebtor stay to UMLIC.

APPLICABILITY OF § 549(c)

Finally, SunTrust argues in support of its motions (in docket 55) that it holds the status of a bona fide, good faith purchaser without knowledge of the bankruptcy or the potential infirmities of Zabu's title and is therefore entitled to the protection of Bankruptcy Code § 549(c).

In view of the conclusion reached above, the court finds it unnecessary to rule on this alternative argument. However, SunTrust raises an interesting issue, which is worthy of brief consideration.

SunTrust relies on the Ninth Circuit decision of <u>Tsafaroff v. Taylor (In re Taylor)</u>, 884 F.2d 478, 483 (9th Cir. 1989). Section 549(a) provides that a bankruptcy trustee may avoid specified unauthorized post-petition transfers of property of the bankruptcy estate. Section 549(c) provides that a trustee may not avoid an unauthorized post-petition transfer of real property "to a good faith purchaser" without notice of the case unless a notice of the bankruptcy petition is filed in the appropriate state real property recording office. 11 U.S.C. § 549(c).

In <u>Taylor</u>, the court of appeals affirmed without serious discussion a bankruptcy court ruling that a purchaser at a foreclosure sale held in violation of the automatic stay of § 362(a) had been a good faith purchaser and took good title under § 549(c). The ruling holds in effect that § 549(c) provides another exception to the automatic stay. This questionable holding was not followed in two subsequent Ninth Circuit Bankruptcy Appellate Panel decisions, <u>Fjeldsted v. Lien (In re Fjeldsted)</u>, 295 B.R. 12 (9th Cir. BAP 2003); <u>Value T Sales, Inc., v. Mitchell (In re Mitchell)</u>, 279 B.R. 839 (9th Cir. BAP 2002). Both of these cases involved sales in violation of the automatic stay, and the BAP rejected arguments that the purchasers took good title under § 549(c). To simplify the BAP's somewhat complex analysis, the court reasoned that "§ 549 protects the estate from unauthorized transfers by the debtor" and is used as "a defense to an avoidance action by the trustee, no more, no less." <u>In re Mitchell</u>, 279 B.R. 843-844. In other words, the transfer to a bona fide purchaser "could not be used . . . to validate an otherwise void deed." <u>In re Fjeldsted</u>, 293 B.R. 26. While acknowledging that <u>Taylor</u> and other Ninth Circuit cases appeared to contradict its analysis, the BAP in <u>Mitchell</u> cited other Ninth Circuit authority

to support its conclusion. 279 B.R. 843; see Schwartz v. U.S. (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992).[2]

My own view is that the Ninth Circuit BAP's decisions represent the correct analysis. Conceptually, it is difficult to see how a void foreclosure deed could result in a bona fide purchaser taking good title. SunTrust's § 549(c) position might be stronger if this case were subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). BAPCPA added a new exception to the automatic stay in § 362(b)(24) for transfers not avoidable under § 549(c). This amendment took effect for cases filed on or after October 17, 2005. 11 U.S.C. § 362(b)(24); See 5 Collier On Bankruptcy, ¶ 549.03[1] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 9/06). However, even under the BAPCPA amendment, the result under the present facts is anything but clear.

CONCLUSION

For reasons previously stated, the motions of Zabu to reconsider and of SunTrust to intervene and to reconsider will be granted. The court will enter an order vacating the order of December 21, 2006, and grant retroactive relief from the codebtor stay to UMLIC.

Signed: _____

/s/ Douglas O. Tice Jr.
DOUGLAS O. TICE JR.
CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

Copies to:

---

[2]The issue raised in these Ninth Circuit cases is not mentioned in Collier's comprehensive discussion of § 549(c); Collier states that the purpose of the statute is to protect good faith purchasers from a fraudulent debtor's selling property of the estate and cites authority holding that it applies only to voluntary transfers and not to judicial sales. 5 Collier On Bankruptcy, ¶ 549.06 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 9/06).

Christopher L. Perkins, Esquire
LeCLAIR RYAN, P.C.
P.O. Box 2499
Richmond, Virginia 23218-2499
*Counsel for Zabu Holding Company, Inc.*

Michael J. Champlin, Esquire
Bowen, Champlin, Carr, Foreman & Rockecharlie
1919 Huguenot Road, Suite 300
Richmond, Virginia 23235
*Counsel for Debtor*

Michael B. Ballato, Esquire
CAUDLE AND BALLATO, P.C.
3123 West Broad Street
Richmond, Virginia 23230
*Counsel for UMLIC VP, LLC*

Carl M. Bates, Esquire
P.O. Box 1819
Richmond, Virginia 23218
*Chapter 13 Trustee*